BEHAN, APPELLEE, *v.* THE CINCINNATI STREET RY. CO., APPELLANT.

(No. 6635—Decided June 13, 1946.)

*Mr. Gurdon Wilson* and *Mr. Henry Beebe,* for appellee.
*Mr. Leo Brumleve,* for appellant.

SKEEL, J.   This cause comes to this court on an appeal on questions of law from a judgment for the plaintiff in the Common Pleas Court of Hamilton county.

The plaintiff, appellee herein, on November 2, 1945, was a passenger on a bus of the defendant, appellant herein, which was being operated on its Cumminsville-Oakley line. The plaintiff seated herself in the middle of the bus. The operator proceeded on his course until he came to a place on his route where the bus was heading west on Erie avenue and was stopped at the intersection of Erie avenue with Delta avenue. When the operator stopped at this point the bus was at an angle so that the front end was at the curb and the rear end some distance out in the street. All the passengers, except the plaintiff and one other, had been discharged before reaching this point and from this point, that is the intersection of Erie avenue and Delta avenue, the bus was to proceed to the garage. While standing at this intersection the operator was engaged in changing the sign to show that his destination from this point was the garage. While he was in the act of making such change the plaintiff left her seat in the middle of the bus and approached him to inquire whether she might ride to a point a few blocks further west which in fact was her destination. The operator gave his consent and she thereupon started to return to her seat in the middle of the bus and in doing so passed all the empty seats in the front part. The construction of the bus was such that there are two side seats in the front, one on each side, the one on the right side providing space for three passengers and being located directly to the rear of the front entrance and exit door, and the one on the left being directly behind the operator and providing space for two passengers. Directly to the rear of these side seats are four seats, two on each side for two passengers each, facing the front of the bus. Back of these seats and in the middle are two more side seats for two passengers each and back of these seats to the rear are four more seats, two on each side, for two passengers each, facing the front

of the bus. At the rear of the bus there are two side seats directly behind the cross seats last described and then a long seat across the rear end. At the front entrance there is a vertical grab bar at the right of the front entrance and a horizontal bar about as high above the floor as the back of the seats, running from the entrance way to a point near the operator's seat. There are also two vertical grab bars, one on each side, directly ahead of the side seats in the middle of the bus as above described. There are also two horizontal grab bars fastened to the roof, one on each side, and running the entire length of the bus. There is also a hand hold fixed to the inner top of the end of the backs of each of the cross seats, that is, next to and along the aisle or passageway running through the middle of the bus from front to rear.

The plaintiff claims to have gotten to a point just past the first four cross seats when the bus started with a violent and sudden jerk; thereby she was first pitched from side to side and then caused to fall and as a result she claims to have sustained certain injuries.

The defendant seeks to reverse the judgment rendered against it, claiming:

(1) That the court committed reversible error in refusing to give two special charges which were submitted in writing and requested to be given to the jury before argument.

(2) In refusing to amplify the general charge as requested on the subject of the credit to be given to the testimony of the several witnesses.

(3) That the verdict is manifestly against the weight of the evidence.

The plaintiff was the only fact witness on her own behalf and on direct examination, in describing her fall, testified as follows:

"* * * and I went up and talked to the operator and asked him if he was going to the barn, which he said he was, and I said, 'well, leave me out at Monteith avenue.' And I went to return to my seat. I hadn't yet got all the ways back when he was twisting the what-do-you-call-it to change the sign to the barn, and on my return back he started up so sudden that I was thrown from one side to the other and the next thing I went down and came down on my arm and my arm went right under me, and I was lying there in that bus, and this young lady—I don't know what she was—called to the bus driver to come back." * * *

"Q. What kind of a jerk? A. It was sudden. It was sudden because if it wasn't sudden I would have tried to grab on to something.

"Q. Did it cause you to sway in that car? A. I swayed this way and that way.

"Q. And then you fell over on your left side? A. Yes. I knew I was coming down and to save my head I went this way and held this way on the bus."

On cross-examination the plaintiff, after acknowledging that when her depositions were taken she had testified that the bus moved about 20 feet before she fell, further testified:

"Q. Now, in the space of that 20 feet that the bus went you were walking back and you were not holding on to anything, were you? A. No, I was going to get to my seat.

"Q. I say you weren't holding on to anything? A. No.

"Q. I see. A. Because I didn't get a chance to hold on. I swayed from one side to the other.

"Q. I don't want to argue with you, I'm just asking you the fact you didn't hold on to anything did you? A. No."

The only other passenger on the bus and the bus

driver both testified that the bus started in the usual way and that it did not start with a violent or unusual jerk or sway from side to side.

Upon a consideration of the entire record, the court is not unanimously of the opinion that the verdict and judgment are manifestly against the weight of the evidence and that claim of the defendant is therefore overruled.

We now come to the charges requested on behalf of defendant before argument. At the conclusion of the taking of the testimony in the case, the defendant requested the court to give seven instructions to the jury, which had been reduced to writing and as thus written were presented to the court. The court gave five and refused to give two of these charges. The charges given in substance dealt with the following subjects:

1. That both sides stand equally before the court and the jury must not permit sympathy or prejudice to affect their verdict.

2. That plaintiff has the burden of establishing one or more of her claims of negligence by the preponderance of the evidence and if she fails in this respect the verdict must be for the defendant.

3. That the common carrier of passengers is not the insurer of the safety of its passengers and a passenger in taking passage on the defendant's vehicle assumed all the riks ordinarily incident to the management of such vehicle, and if she lost her balance and fell because of any jerks or other motion of the vehicle, which were ordinarily incidental and reasonably necessary in its proper operation, then the defendant would not be liable for injuries sustained in such fall.

4. That it was not negligence as a matter of law for the bus to start after passengers are safely aboard but before they have been seated.

5. That if the plaintiff was negligent and her negligence in the slightest degree proximately contributed in causing her injuries then she cannot recover.

The charges that were refused were as follows:

"1. The court charges you that, if you find that plaintiff lost her balance and fell because of the movement of the bus and that such movement was necessary in the practical operation of the bus, then there is no negligence on the part of the defendant and your verdict must be for the defendant, The Cincinnati Street Railway Company.

"2. The court charges you that it was the duty of the plaintiff to exercise ordinary care for her own safety when she was a passenger on this bus, and if you find that ordinarily prudent persons under the same or similar circumstances as the plaintiff was in on said bus would have supported themselves by holding or gripping any of the facilities provided by the defendant on its busses to support its passengers and plaintiff failed to do so, then she was negligent."

The subject of the first charge refused was fully covered under No. 3 of the special charges given and therefore it was not prejudicial error to refuse such request.

The second charge refused was a correct statement of the law. The evidence, a part of which is set forth above, completely described the interior of the bus and the provisions therein provided for the convenience of passengers in guarding against changes of momentum and jerks naturally incident to its practical operation in carrying passengers for hire. Whether the plaintiff conducted herself as an ordinarily prudent person would have acted under similar circumstances is clearly an issue in the case.

The case of *Sharpsteen* v. *Cincinnati Street Ry. Co.,* 27 Ohio Law Abs., 202, 31 N. E. (2d), 885, decided on February 7, 1938, had for consideration this iden-

tical question. In that case the plaintiff had boarded a
street car and while she was still on the rear platform
the car started and stopped suddenly with a jerk
whereby the plaintiff was thrown against the fare box
and injured. There was a grab bar on the platform
and the defendant requested and the court gave the
following special instruction before argument:

"The court charges you that it is the duty of the
plaintiff to exercise ordinary care for her own safety
while a passenger on a street car—that is, she must
do what an ordinarily prudent person would do under
the same or similar circumstances—and that the de-
fendant, in the operation of its car, has a right to as-
sume that the plaintiff will exercise such care when
she becomes a passenger on the street car.

"The court further charges you that if you find
that ordinarily prudent persons under the same or
similar circumstances would have supported them-
selves by the rod on the platform, and that plaintiff
failed so to do, then she was negligent; and, if you find
that she was negligent and that such negligence direct-
ly contributed, in the slightest degree to the cause of
her injuries, then the plaintiff cannot recover and your
verdict must be for the defendant, the Cincinnati Street
Railway Company."

The reviewing court, in holding that the trial court
was correct in giving such special instruction, said:

"This charge does not declare that any stated con-
duct is negligence. It submits to the jury for its de-
termination whether ordinary care required that the
plaintiff should have supported herself by holding to
the rod on the platform * * *."

But the plaintiff in the instant case, in seeking to jus-
tify the failure to give this instruction, asserts that it
was not complete in that it omitted the elements of
contributory negligence and proximate cause. Upon
this subject it must be noted that special request No.

which was given, completely covered the questions of contributory negligence and proximate cause as it has reference to the plaintiff's conduct and therefore if it was necessary to include these questions to have a complete charge, it was in fact done and the plaintiff's claims are without foundation. However, in making the requests for this special instruction it is not necessary to cover all the issues. A party may select just one legal proposition and if it is a correct statement of law applicable to an issue in the case which is supported by some evidence, the court must, under paragraph 5 of Section 11420-1, General Code, give such instruction to the jury when timely and properly presented.

In *Washington Fidelity National Ins. Co.* v. *Herbert*, 125 Ohio St., 591, 183 N. E., 537, the Supreme Court set aside a judgment for plaintiff and granted a new trial for the failure of the court to give the following special instruction before argument:

"Ladies and gentlemen of the jury, I charge you that if you find the intersection of Seventh and Walnut streets in the city of Hamilton, Ohio, was on March 27, 1930, a closely built-up or business portion of said city of Hamilton, Ohio, then I charge you that any rate of speed in excess of twenty miles per hour at that point was *prima facie* unlawful."

The case involved the liability of the insurance company for the death of the assured when the policy exempted the insurance company from such liability where death was caused while the assured was under the influence of intoxicating liquor or acting in violation of any law. The court held:

"1. Section 11447 [11420-1 (5)] confers upon parties to civil actions the absolute right to have instructions, when presented in writing, given to the jury before argument if so requested, provided the same be a

correct statement of the law, pertinent to one or more issues and applicable to evidence adduced in the case.

''2. Error in refusing to give such requested charge before argument is not cured by giving the same instruction in substance or in terms in the general charge.''

The plaintiff herein, in support of her claim that the charge was incomplete, cites the case of *Uncapher* v. *B. & O. Rd. Co.*, 127 Ohio St., 351, 188 N. E., 553. In that case plaintiff was injured in a crossing accident at the intersection of the B. & O. and Nickel Plate tracks with East Market street in the city of Lima, Ohio. When plaintiff came to the crossing a Nickel Plate passenger train was moving over the intersection and a B. & O. crossing watchman was standing in the center of East Market street waving a red lantern. When the passenger train passed, the watchman started toward his shanty and plaintiff believing the way to be clear and that the crossing watchman's conduct was an invitation to proceed, started across the tracks when the rear of his car was struck by a southbound B. & O. freight train which had been approaching the intersection on the track closest to the place where plaintiff had stopped his automobile. The plaintiff testified that after the Nickel Plate passenger train passed to the south he did not look to the south to see if a train was proceeding on the track nearest to him. The defendant's answer alleged that the accident was due to the sole negligence of plaintiff and also alleged contributory negligence and from the plaintiff's own lips evidence was given in support of either or both of these claims.

At the conclusion of all the evidence defendant requested the following special instruction in writing:

''The court charges you, as a matter of law, that if you find, from a preponderance of the evidence, that

the plaintiff's own negligence in any degree contributed to the causing of the collision and his resultant injuries, plaintiff cannot recover and your verdict must be for the defendant, no cause of action.''

In the opinion, on page 365, the court in discussing the claimed error in that charge said:

''We find that there was error in the charge because of its prolixity and repetitious character. * * * That the trial court erred in giving to the jury special instruction No. 1, not that the charge was not germane, but that it was incomplete in that it omitted the element of proximate cause.''

Such a statement is rather confusing when in examining the charge criticized, it is found to include the words that if ''plaintiff's own negligence in any degree contributed to the causing of the collision * * *.'' But in any event the charge that was requested was on the subject of contributory negligence and its effect upon the right of plaintiff to recover. Such a charge must of necessity include the question of proximate cause and if omitted would be incomplete. But the special instruction that was asked of the court in request No. 2 in the case now before us was as to whether the conduct of the plaintiff under the circumstances constituted negligence. It clearly stated the law on that question and was therefore complete. The question of proximate cause was a separate and distinct issue. Because of the closeness of the evidence on both negligence and contributory negligence in this case, it was especially incumbent on the court to fully and completely charge the jury on all of these issues, including the giving of the requested charge No. 2 which was directly pertinent to the question of contributory negligence. The court's refusal to give such requested instruction before argument, because it was erroneously held to be incomplete, was prejudicial to the defendant's rights and constituted reversible error.

The remaining assignment of error has to do with the refusal of the court to amplify the general charge on the subject of the duty of the jury to determine the credibility of the witnesses. The court in its general charge said on this subject:

"You are the sole judge of the weight of the evidence and the credibility of the witness."

At a later place in the charge the court explained what was meant by "the weight of the evidence" but did not further explain the jury's duty in determining the credit they would give to the testimony of the several witnesses. After the charge had been completed the defendant called the omission to the court's attention in the following manner:

"I also want Your Honor to charge the jury that in considering the credibility of the witnesses they can take into consideration the interest that they have in the outcome of the lawsuit, the relationship of the parties, the bias or prejudice that they may have displayed upon the witness stand, the candor or lack of candor, or any other thing which they feel would be implied from the testimony of the witnesses."

The court refused, saying that the matter requested had been covered in one of the special charges. In this the court was in error. None of the special charges given before argument dealt with the credibility of the witnesses. The defendant's request was entirely proper and the court should have granted it. But we do not believe that failure to grant the request was prejudicial and therefore it did not constitute reversible error.

For the reasons above stated the judgment of the trial court is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

DOYLE and MORGAN, JJ., concur.

Doyle, J., of the Ninth Appellate District, and Skeel and Morgan, JJ., of the Eighth Appellate District, sitting by designation in the First Appellate District.